**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-CV-80690-RLR**

SHANGHAI LIYU OPTOELECTRONICS
CO., LTD.

    Petitioner,

v.

BRITE LITE TRIBE, LLC,

    Respondent.
_____/

**ORDER GRANTING THE PETITION TO**
**CONFIRM AND ENFORCE FOREIGN ARBITRAL AWARD**

**THIS CAUSE** is before the Court on the Petition to Confirm and Enforce Foreign Arbitral Award and for Entry of Judgment by Petitioner Shanghai Liyu Optoelectronics Co., Ltd. ("Liyu"). DE 1. The Court has reviewed the record and the briefings by Petitioner and Respondent Brite Lite Tribe, LLC ("Brite Lite"). DE 14, 18, 22. The Court has conducted a status conference and an evidentiary hearing on the Petition, DE 24, 32, and is otherwise fully advised in the premises. For the reasons set forth below, the Petition is **GRANTED**.

**I.     FACTUAL BACKGROUND**

The following background is not in dispute. Petitioner Liyu is a Shanghai-based corporation existing under the laws of the People's Republic of China. Respondent Brite Lite is a Florida-based limited liability company that produces and markets customizable LED signs. Since Brite Lite's inception, it sourced materials for its LED signs from Liyu. The parties communicated frequently, primarily through email or other online messaging platforms like Skype. Hearing Tr. at 52:10-14. A few years into the business relationship, on January 20, 2021, the parties entered

into a Payment Agreement. DE 1 ¶ 9. The Payment Agreement set forth the terms by which Brite Lite would order Liyu's goods on a $120,000 credit line. DE 1-2 at 57. The Payment Agreement included the following arbitration clause:

> 9. This contract and this arbitration clause shall be governed by Chinese law. Any dispute arising from or related to this contract shall be submitted to the Shanghai International Economic and Trade Arbitration Commission/Shanghai International Arbitration Center for arbitration. The arbitration award is final and binding on both parties. The place of arbitration is Shanghai, and the language of arbitration is Chinese.

DE 1-2 at 58 ¶ 9.

On February 18, 2022, Brite Lite entered into a joint venture with an affiliate of Liyu, Hunan Kangxuan Technology Co., Ltd. ("HK"). *See* DE 14-2. The joint venture formed LB Neon Group, LLC ("LB Neon"), which was governed by an Operating Agreement. *Id.* At the time that Brite Lite and HK formed LB, Brite Lite's business address was in Jupiter, Florida. *Id.* at 1.

Shortly after forming LB Neon, the joint venture entered into a lease agreement for a location in Stuart, Florida, to serve as a future LB Neon facility. Hearing Tr. at 50:18-19, 59:7-10. In September and October 2022, representatives of HK and Liyu visited Florida to conduct training for Brite Lite employees. *Id.* at 50:20-24. During the training, the HK and Liyu representatives worked from Brite Lite's Jupiter address but visited the Stuart address to check on the progress of the joint-venture facility's construction. *Id.* at 53:21–54:5.

Also in 2022, however, Brite Lite began to fall behind on its payments to Liyu under the terms of the parties' Payment Agreement. Beginning in November 2022, Liyu's communications with Brite Lite began to focus on demanding the past-due payments from Brite Lite. Hearing Tr.

at 98:3-12.  And in December 2022, Brite Lite ceased all communications with Liyu. *Id.* at 97:18-25.

On March 6, 2023, Liyu submitted a petition for arbitration to the Shanghai International Arbitration Center ("SHIAC"). DE 1 ¶ 12; Hearing Tr. at 16:10-16.  In accordance with SHIAC procedures, Liyu provided SHIAC with Brite Lite's registered address, as well as the email accounts of Brite Lite's two members, Thomas (Tom) Bowser and Lisa Bowser. Hearing Tr. at 18:21–19:4.  At the time and through at least April 27, 2023, Brite Lite's registered address with the Florida Division of Corporations was the Jupiter address. *See* DE 18-20.

SHIAC accepted the petition for arbitration on March 10, 2023. DE 1 ¶ 12; *id.* at 16:10-16. The arbitral hearing took place on July 28, 2023; Brite Lite did not appoint an arbitrator or any representatives to attend the arbitral hearing, nor did Brite Lite submit any evidence or other materials. DE 1 ¶¶ 16–26.  The SHIAC arbitration panel issued an arbitration award (the "Award") in favor of Liyu on December 13, 2023. *See* DE 1-2 at 34, 55. *Id.* ¶ 31.

## II.     PROCEDURAL HISTORY

On May 31, 2024, Liyu filed the instant complaint against Brite Lite, seeking to enforce and confirm the Award. DE 1.  Liyu alleged that on March 13, 2023, the Secretariat of SHIAC sent a notice of SHIAC's acceptance of Liyu's arbitration petition, as well as several other arbitration-related documents, to Brite Lite. *Id.* ¶ 14.  In its briefing, Liyu alleged that Brite Lite received proper notice of the arbitration through DHL mailings to Brite Lite's registered address. DE 18 at 5–6.  In support, Liyu attached multiple alleged DHL waybills and DHL tracking details. *See* DE 18.  The DHL waybills included deliveries that were sent in March, June, July, October,

3

and December 2023. *See* DE 18 at 10–12.  Two of the alleged waybills indicated that a person named Santos signed for the deliveries in July and December 2023. *See* DE 18-7, 18-11.

In its response, Brite Lite opposed Liyu's petition on multiple grounds. DE 14.  One of these grounds was that "Brite Lite never received notice of the Proceeding" because Liyu had *actual knowledge* that by March 2023, Brite Lite had completely moved into its Stuart address and was no longer operating out of its Jupiter address. *See* DE 14 at 13.  Brite Lite stated that Santos—who purportedly signed for two of the alleged DHL deliveries—was "a person unknown to Brite Lite." DE 22 at 7.

Based on this argument—that Liyu had purposefully provided an outdated address to SHIAC and that the signatory of the mail recipient was a "person unknown"—the Court held an evidentiary hearing on February 11, 2025. DE 32.

### III.   LEGAL STANDARD

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), to which the United States is a party, governs "the recognition and enforcement of arbitral awards made in the territory of" a foreign state. New York Convention, art. I(1).  Through the Convention and implementing legislation, the United States sought "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974).  The United States codified its Convention obligations in the Convention Act, 9 U.S.C. §§ 201–08, which affords "considerable deference" to foreign arbitral awards. *Castro v. Tri Marine Fish Company LLC*, 921 F.3d 766, 773 (9th Cir. 2019).

4

"A federal court's review of an arbitration award is highly deferential and extremely limited." *United Steel, Paper & Forestry, Rubber, Mfg., Energy Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC, USW Local 200 v. Wise Alloys*, LLC, 807 F.3d 1258, 1271 (11th Cir. 2015) (citations omitted). Consequently, a court must confirm a foreign arbitral award unless the party resisting enforcement meets its substantial burden of proving one of seven narrowly interpreted defenses. *Castro*, 921 F.3d at 773. The party opposing recognition or enforcement bears the burden of establishing that a defense applies; if a party fails to meet this burden, the court must confirm the petition. *Id.*

## IV.    ANALYSIS

In its initial response opposing the Award, Brite Lite raised two arguments before the Court. First, Brite Lite argued that Brite Lite was not afforded proper notice of the arbitral proceeding. DE 14 at 13. Second, Brite Lite argued that the SHIAC tribunal exceeded its power by deciding disputes not contemplated under the Payment Agreement. *Id.* at 15. The Court addresses each argument and supporting evidence in turn. The Court makes factual findings to resolve the first argument, and it reaches legal conclusions to resolve the second.

**A.    The Court's Factual Findings on the Issue of Adequate Notice**

The Court begins with the question of adequate notice. One defense to the confirmation of a foreign arbitral award is that "the party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." New York Convention, art. V(1)(b). To establish lack of notice as a defense, "the party challenging the award must show that the arbitration procedures failed to comport with this country's standards of due process." *Guarino v. Productos Roche S.A.*, 839 F.

App'x 334, 339 (11th Cir. 2020). Due process requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mesa Valderrama v. United States*, 417 F.3d 1189, 1196–97 (11th Cir. 2005) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Successful actual notice is not required; the adverse party need only prove an attempt to provide actual notice. *Id.* at 1197.

With the foregoing legal standard in mind, the Court makes three key factual findings based upon the evidence in the court file and the evidence admitted at the evidentiary hearing.

1. First Finding of Fact: Liyu complied with its internal procedures.

Liyu provided evidence that Liyu complied with SHIAC's standard notice procedures. Liyu provided testimony from Ms. Hongli Sun, an attorney who has practiced law in China for nearly eighteen years. Hearing Tr. at 11:5-6. Ms. Sun represented Liyu in the arbitral proceedings before SHIAC, *id.* at 12:16-19, and she also is an arbitrator with a different arbitration body, the Shanghai Arbitration Commission, *id.* at 11:19-24. Ms. Sun testified that SHIAC as the arbitration entity is required to serve all arbitration documents on the parties. Hearing Tr. at 19:16-18. Ms. Sun testified that "in China the arbitration documents are not served by the attorneys handling the arbitrations. The service is handled by the arbitration bodies' secretariat." *Id.* at 19:23-20:1. Ms. Sun testified that "[a]ccording to Chinese law, the arbitration documents are required to be delivered to the registered official address of that entity." *Id.* at 18:24-19:1. Ms. Sun also testified that she has "personally handled some international service and enforcement in the capacity of an arbitrator. . . . [A]s long as the service is delivered to the address, it can be regarded that service is completed. It does not require the signature of the recipient." *Id.* at 27:20-24.

Liyu also provided as evidence the SHIAC Arbitration Rules, which aligns with Ms. Sun's testimony:

**Article 61 Service**

1. Unless otherwise agreed to by the parties, documents, notices and written materials in relation to arbitration may be sent to the parties and/or their representatives in person, or by registered mail or express mail, facsimile, telex, cable, or by any other means considered appropriate by the Secretariat.

2. Documents, notices and written materials in relation to arbitration to a party and/or its representative(s) shall be deemed to have been properly served on the party if delivered to the parties in person or delivered at its place of business, registration, domicile, habitual residence or mailing address, or where, after reasonable inquiries by the other party, none of the aforesaid addresses can be found, the written correspondence is sent by the Secretariat to its last known place of business, domicile, habitual residence or mailing address by registered mail or by any other means that provides a record of the attempt of delivery.

DE 18-16 at 40.

Ms. Sun went on to testify that Liyu "ha[s] complied with the rules," *id.* at 19:18, and that Liyu provided not only Brite Lite's official registered address for SHIAC's service, but also the email accounts of Tom and Lisa Bowser, *id.* at 19:2-4. Ms. Sun testified that she has received all of the relevant arbitration materials by mail from SHIAC. *Id.* at 27:25-28:3.

The Court finds that Ms. Sun was a credible witness with a persuasive, truthful demeanor. The Court believes she answered all questions posed to her honestly. For these reasons, the Court makes the factual finding that Liyu complied with SHIAC's standard notice procedures.

2. <u>Second Finding of Fact: Liyu did not have actual knowledge that Brite Lite changed its primary physical address.</u>

Liyu provided evidence that Liyu had no actual knowledge that Brite Lite was no longer at the Jupiter address. Liyu has provided testimony from Ms. Hongbo (Fanny) Guo, who works for Liyu, handled Liyu's communications with Brite Lite, and was the point of contact for the joint

7

venture between Brite Lite and Liyu's affiliate company, HK. *Id.* at 49:2-20.  Ms. Guo testified that she understood that Brite Lite's office address was in Jupiter, and that Liyu was never informed that Brite Lite had moved its mailing or business address to another location. *Id.* at 50:7-15.  Ms. Guo further testified that she was working with Brite Lite in Florida from September to October 2022 to set up the joint-venture facility. *Id.* at 50:18-24.  When she was in Florida, she mostly worked from the Jupiter address but occasionally stopped by the Stuart address to check on the progress of the facility construction. *Id.* at 53:21-54:4.  Ms. Guo understood the Stuart address to be the location for the joint venture, LB Neon, and not for Brite Lite. *Id.* at 54:2-5.  Up until Ms. Guo left Florida in October 2022, she worked from the Jupiter location. *Id.* at 59:11-19.  Ms. Guo testified that Liyu never received notice from Brite Lite that it wanted to move its address to the joint-venture facility. *Id.* at 54:25-55:4.

For its part at the evidentiary hearing, Brite Lite appeared to retract from its original position that Liyu had actual knowledge that it provided an outdated address to SHIAC.[1]  Mr. Bowser testified that the joint venture signed a lease agreement on the Stuart location in March 2022 and began to move into the Stuart location in October 2022. *Id.* at 88:1-8.  Mr. Bowser testified that the Liyu and HK representatives were on site in Stuart in October 2022, when Brite Lite had begun to make signs out of the Stuart facility. *Id.* at 89:9-15.  Mr. Bowser also testified, however, that there was a transition period for the move, and that Brite Lite began fully working out of the Stuart location in November 2022, after the Liyu and HK representatives had left Florida. *Id.* at 11-17.

---

[1] Brite Lite also appeared to change its original position that Santos was "a person unknown to" Brite Lite.  During the hearing, Ms. Bowser stated that she knows a person named Santos, who currently works for Brite Lite and who worked for Brite Lite during the period in question. Hearing Tr. at 68:19-21; *see also id.* at 50:18-25.

The Court finds that Liyu's evidence is credible, and that Brite Lite has not provided evidence that refutes Liyu's position. The Court therefore makes the finding of fact that Liyu never had actual knowledge that Brite Lite changed its primary physical address.

3. <u>Third Finding of Fact:  Liyu emailed adequate notice to Brite Lite.</u>

Ms. Guo testified that from November to December 2022, she sent many emails to Brite Lite asking for overdue payments. *Id.* at 53:3-5; 98:8-12. Ms. Guo testified that around December 2022, after disputes arose between the parties, Brite Lite stopped responding to Ms. Guo's emails. *Id.* at 52:22-53:2. Importantly, Ms. Sun testified that over the course of the arbitration process, she "transmitted the information via emails to [Brite Lite]," and that "even before the arbitration proceeding, we had tried by way of email to negotiate with [Brite Lite] trying to reach a certain agreement, yet, we never received any response." *Id.* at 41:19-42:6.

To refute Liyu's evidence and to support Brite Lite's burden to show that notice was not reasonably calculated,[2] Brite Lite has provided the following evidence. As to the question of whether Brite Lite received actual notice, co-owners Tom and Lisa Bowser each testified that they did not receive any notice of the arbitration proceeding by mail. Hearing Tr. at 67:9-20; 81:13-24. Mr. Bowser testified that he never received any email from SHIAC, Liyu, or HK regarding an arbitration. *Id.* at 82:7-14. Mr. Bowser testified that before developing the joint venture, Ms. Bowser was the main point of contact with Ms. Guo for sales and orders. *Id.* at 84:19-23. Ms. Bowser, meanwhile, testified that she spoke to Ms. Guo "on a daily basis via email and Skype,

---

[2] Brite Lite had also argued that Liyu did not provide proper notice because it did not abide by the parties' agreed method of delivery, email. DE 22 at 3. Brite Lite argued that a clause stating the parties' designated "[c]ontact information" was a notice provision. DE 1-2 at 58. The Court disagrees with Brite Lite's premise, however; the parties did provide their names and emails as contact information, but nothing in the Payment Agreement establishes that "the proper form of notice to Brite Lite . . . was *exclusively* email." DE 14 at 14 (emphasis added).

9

phone calls . . . we spoke every day for seven years." *Id.* at 62:8-14.  Ms. Bowser then testified that she did not receive any email regarding the arbitration. *Id.* at 68:5-13.

When pressed about her communications with Liyu, however, Ms. Bowser's answers became evasive and defensive, even in response to simple questions such as whether Ms. Bowser remembered deleting any emails she received from Liyu. *Id.* at 77:4-21.  For example, when asked whether she denied receiving emails from Ms. Guo regarding overdue payments, Ms. Bowser stated, "I don't recall—it was a very tenuous time.  I don't recall the specific one you are referring to." *Id.* at 75:2-8.  When the Court asked Ms. Bowser a line of questions to clarify her testimony, Ms. Bowser continued to prevaricate. *Id.* at 95:19-97:4.  The Court did not find Ms. Bowser's testimony credible.

Based on the evidence presented and the Court's credibility determinations, the Court makes the finding of fact that Liyu emailed adequate notice of the arbitration to Brite Lite.  The Court further finds that at a minimum, Brite Lite intentionally did not read the notice e-mails about the arbitration, and that in the alternative, Brite Lite did read the e-mails and testified falsely on the subject at the evidentiary hearing.

\* \* \*

Given the Court's findings of fact based on the evidence presented by both parties, the Court looks to *Guarino v. Productos Roche S.A.* for guidance. 839 F. App'x at 339–40.  In *Guarino*, the Eleventh Circuit affirmed the district court's confirmation of a foreign arbitration award.  The respondent argued that he was not afforded proper notice by the arbitration tribunal, which provided notice, according to its standard procedures, through a "Venezuelan newspaper of local Venezuelan circulation when [the respondent] is a U.S. citizen residing and domiciled in

Miami, Florida." *Id.* at 339.  The Eleventh Circuit determined that notice was reasonably calculated under the circumstances because the arbitration tribunal had also attempted to mail and email the respondent multiple times to inform the respondent of the arbitration. *Id.* at 340.  The tribunal sent mail notifications to the business address listed on the purchase agreement at issue, and the emails were sent to the addresses that the petitioner had on file. *Id.*

Given this guidance, the Court finds that Brite Lite has not met its burden to show that notice was not reasonably calculated under all the circumstances, and the Court finds that Liyu has met its burden to show that it attempted to provide actual notice.  From the evidence presented, Brite Lite ceased responding to Liyu in late 2022.  After Brite Lite did not respond to Liyu's emails seeking to negotiate an agreement, Liyu's attorney followed the standard procedures of SHIAC, which the parties agreed would govern any disputes arising out of the parties' Payment Agreement. In compliance with SHIAC procedures, Liyu's attorney provided Brite Lite's mailing address and emails to SHIAC.  Regarding the mailing address, Liyu did not have actual knowledge that Brite Lite had ceased operations at the Jupiter address when Liyu initiated the arbitration proceedings in March 2023.  It was therefore reasonable for Liyu to rely on the physical address listed on Brite Lite's official business registration, and to send arbitration-related emails to the Brite Lite email addresses listed on file. *See Guarino*, 839 F. App'x at 339–40 (finding notice reasonably calculated when the petitioner sent notice to the business address listed on a purchase agreement and email addresses on file); *see also Weihai Textile Grp. Imp. & Exp. Co. v. Eruption Holdings, Inc.*, No. 21-MC-147-SWS, 2022 WL 18141749, at *8 (D. Wyo. Mar. 4, 2022) (finding that the respondent did not carry its burden to show lack of proper notice because "[a]bsent convincing evidence to the contrary, . . . the Court defers to the arbitrator's statements in the arbitral award of having

11

mailed multiple notices to [the respondent] and confirmed their delivery"); *c.f. Ma v. Fang*, No. SACV21441PSGADSX, 2022 WL 1078867, at *4 (C.D. Cal. Mar. 2, 2022) (finding notice improper when it was provided at the respondent's last-known residential and business addresses in China when the respondent proffered credible evidence indicating that she had canceled her local address with the Chinese government before moving abroad—over a decade prior).

For these reasons and based upon the Court's findings of fact, the Court concludes that Brite Lite has not carried its burden to show a lack of proper notice under Article V(1)(b) of the New York Convention.

**B.     The Court's Legal Conclusions on the Scope of the Arbitration Provision**

Brite Lite's second defense is that the SHIAC tribunal exceeded its power by deciding disputes not contemplated under the Payment Agreement. DE 15 at 15. Under Article V(1)(c) of the New York Convention, an award should be denied enforcement when it deals "with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration." "In other words, if the parties did not agree in the contracts to submit certain disputes to arbitration, then arbitral awards purporting to resolve those disputes should not be confirmed." *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1168 (11th Cir. 2004). "At bottom, the dispute between the parties hinges on the language of the contracts themselves." *Id.*

Brite Lite contends that SHIAC improperly considered transactions that were made pursuant to Brite Lite and HK's separate Operating Agreement.[3] DE 15 at 15–16. It is true that

---

[3] In its Response, Brite Lite had also moved for this Court to compel arbitration pursuant to Brite Lite and HK's Operating Agreement. DE 14 at 19. HK is not a party currently before this Court, but Brite Lite has informed the Court that HK commenced a lawsuit against Brite Lite in the 15th Judicial Circuit of Florida in Palm Beach County. In that proceeding, the court ordered that the dispute be sent to arbitration. Hearing Tr. at 101:14-21.

the arbitration award referenced the establishment of the joint venture, LB Neon, as well as Liyu's affiliate, HK. *See* DE 1-2 at 41.  And it is true that the arbitration award describes how the transaction mode between Brite Lite and Liyu changed with the establishment of LB Neon: According to the award, before establishing LB Neon, Brite Lite would place orders with Liyu, which would then process, manufacture, and ship the goods to Brite Lite. *Id.*  Based on the credit limit, Brite Lite would then settle the payment by the fifteenth of the following month. *Id.*  After Brite Lite and HK established LB Neon, Brite Lite would first place an order with Liyu, which would then place an order with HK, which in turn would place an order with LB Neon; LB Neon would process, manufacture, and deliver the goods directly to Brite Lite. *Id.*

These transactions, however, do not extend beyond the scope of the parties' Payment Agreement.  The Payment Agreement governs the "credit line and payment settlement method" between Liyu and Brite Lite. DE 1-2 at 57.  The Payment Agreement provides a payment method by which Brite Lite would settle payment with Liyu directly—but it also explicitly contemplates other methods or transactions, stating that "[i]f other methods are used, the two parties will negotiate and confirm separately." *Id.* at 57 ¶ 2.  And the LB Neon Operating Agreement—to which Liyu is not a party—does not contain any terms regarding a credit line between Liyu and Brite Lite.

For these reasons, the Court finds that Brite Lite did not carry its burden to establish that the award should be denied enforcement because it contains decisions on matters beyond the scope of the submission to arbitration. New York Convention, art. V(1)(c).

## V.     CONCLUSION

"Because arbitration is an alternative to litigation, judicial review of arbitration decisions is among the narrowest known to law." *Bamberger Rosenheim, Ltd. v. OA Dev., Inc.*, 862 F.3d 1284 (11th Cir. 2017) (quotation marks and citation omitted).  Because Brite Lite has not met its high burden to prove that a defense applies, the Court must confirm the petition. *Castro*, 921 F.3d at 773.  Therefore, for the foregoing reasons, it is **ORDERED AND ADJUDGED**:

1. The Petition is **GRANTED**, and the foreign arbitral award is **CONFIRMED**. Judgment is hereby entered in favor of Petitioner Shanghai Liyu Optoelectronics Co., Ltd., and against Respondent Brite Lite Tribe, LLC.

2. The Clerk of Court is ordered to **CLOSE** this case.  All pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 8th day of April, 2025.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record